$E - 1695 \cdot 75, -$

## AFFIDAVIT OF DAVID J. MCKEOWN

I, David J. McKeown being duly sworn, depose and state as follows:

### I.    **INTRODUCTION**

1.    I am a Special Agent with the United States Secret Service ("USSS") and have been employed as such since March 9, 2005. My responsibilities include the investigation of federal criminal offenses, including, but not limited to, violations involving counterfeit U.S. currency, access device fraud, bank fraud, counterfeit securities, computer fraud, fraudulent negotiation of United States Treasury checks, and other financial crimes. I am currently assigned to the Boston Field Office's Financial Crimes Task Force; the squad's primary responsibilities involve investigations into identity theft, network intrusion, and commercial check, bank, and wire fraud.

2.    I base this affidavit on my own personal knowledge as learned through my investigation of the crimes described herein and my conversations with others, including other investigating officers. This affidavit is submitted solely for purpose of establishing probable cause in support of a criminal complaint charging Patrick Lee ("Lee") with violating 18 U.S.C. §§1341 (mail fraud), 1343 (wire fraud),) and 1028A (aggravated identity theft). Therefore, this affidavit does not contain all facts known to the USSS and other law enforcement agencies with regard to the individuals, entities, and events described herein.

3.    Lee is licensed by the Commonwealth of Massachusetts as a real estate appraiser. At all times relevant to the facts set forth herein, Lee was the president of a real estate appraisal company called Northeast Value Consultants, 24 Fireside Drive, Epping, New Hampshire.

1

## II.  SCHEME TO DEFRAUD

4.  Investigation by agents of the USSS and the Internal Revenue Service ("IRS") has revealed that Lee, Dwight Jenkins ("Jenkins"), and others have, for a period of several years, engaged in a scheme to defraud involving a variety of material misrepresentations to mortgage lenders for the purpose and purchase and sale of real estate in Massachusetts. Among the material misrepresentations made to mortgage lenders are those at the heart of the fraud described herein: Lee's use, without lawful authority, of the means of identification Brian O'Donnell, a licensed Massachusetts real estate appraiser, in connection with, and with the intent to commit, and aid and abet in the commission of, mail and wire fraud. At all times relevant to the facts set forth herein, Lee had a business relationship with O'Donnell. Specifically, O'Donnell often served as the supervisory appraiser on properties that Lee appraised. Under Massachusetts law, a supervisory appraiser is required to review appraisals performed in connection with obtaining mortgage financing when the original appraisal was performed by an appraiser not fully qualified to perform independent appraisals. At no time, did O'Donnell work for Northeast Value Consultants.

5.  As described below, Lee has, on several occasions, used Brian O'Donnell's identity to prepare appraisals that fraudulently inflated the valuation of target properties for the purpose of the selling said properties to inexperienced buyers recruited by Jenkins. Jenkins recruited such buyers (hereinafter "straw buyers") by paying them to apply for mortgage loans in their own names to acquire the target properties. Jenkins further assured the straw buyers that he would (1) make all mortgage payments on the properties; (2) maintain and/or improve the properties; (3) re-sell the properties at a profit; and (4) share the proceeds of the re-sale with the straw buyers. In fact, Jenkins did not perform such actions and each of the lenders foreclosed on

2

the properties described herein due to nonpayment of the mortgages. What follows is a description of the conduct by Lee and others with respect to the following four properties: (1) 650 East Sixth Street, South Boston, Massachusetts ("650 East Sixth Street"); (2) 80 Draper Street, Dorchester, Massachusetts ("80 Draper Street"); (3) 110 Norton Street, Dorchester, Massachusetts ("110 Norton Street"); and (4) 50A Stacy Street, Randolph, Massachusetts ("50A Stacy Street").

## 650 East Sixth Street, South Boston, Massachusetts

6. According to records maintained by the Suffolk County, Massachusetts Registry of Deeds, Lee purchased 650 East Sixth Street on or about July 20, 2005 for $502,500. On or about September 13, 2005, Lee created the 650 East Sixth Street Condominium Trust, and by so doing created 650 East Sixth Street, Units 1 and 2.

7. According to the Registry records, on or about September 13, 2005, Lee sold 650 East Sixth Street, Units 1 and 2 to his sister-in-law, Rachel Bellino Lee ("Bellino Lee") for $350,000 each. To purchase the two units, Bellino-Lee obtained mortgage loans from Union Capital Mortgage Business Trust ("Union Capital"), of Braintree, Massachusetts. I have reviewed the Union Capital mortgage files pertaining to these mortgage loans.

8. According to the Union Capital mortgage files pertaining to the sale by Lee to Bellino-Lee of 650 East Sixth Street, Units 1 and 2, Brian O'Donnell of Old Mill Appraisals ("O'Donnell") performed the appraisals of the two units. The invoices for the two appraisals list the phone number for Old Mill Appraisals is 617-290-1761. In fact, according to records maintained by Sprint Nextel, 617-290-1761 is a cellular telephone number which, at all times relevant to the facts set forth herein, was assigned to Lee. This number shall hereinafter be referred to as "Lee's cell phone number."

3

9.      The Commonwealth of Massachusetts assigns an appraiser license number to all real estate appraisers it licenses. The invoices for the appraisals of 650 East Sixth Street, Units 1 and 2 list O'Donnell's appraiser license number as 3893. I have interviewed O'Donnell. According to O'Donnell, he was not hired to perform, and did not perform, the appraisals for these properties. O'Donnell stated that he is licensed by the Commonwealth of Massachusetts as a real estate appraiser and his license number is in fact #3893. O'Donnell operates a company called Old Mill Appraisals, 71 Tamarack Trail, Weymouth, Massachusetts. The telephone number for Old Mill Appraisals is 617-688-7865. O'Donnell stated that this information appears on all his appraisals. During the interview, O'Donnell showed me a copy of a standard Old Mill Appraisal invoice form, which lists for Old Mill Appraisals the address and phone number O'Donnell provided.

10.     The appraisals contained in the Union Capital mortgage files pertaining to the sale by Lee to Bellino-Lee of 650 East Sixth Street, Units 1 and 2 contain the following language, which suggests that, prior to the sale to Bellino-Lee, the property underwent renovations: "LAST SALE RECORDED WAS A ESTATE SALE, SUBJECT WAS SOLD AS A 2-FAMILY AND HAS BEEN SINCE RENOVATED AND CONVERTED INTO CONDOS."

11.     According Registry records, on or about March 15, 2006 Bellino-Lee sold 650 East Sixth Street, Unit1 to Daniel Davis ("Davis") for $652,900. Union Capital financed the mortgage. Registry records indicated that, on the same date, Bellino-Lee sold 650 East Sixth Street, Unit 2 to Whitney Cherry ("Cherry") for $665,500. Union Capital financed that mortgage as well.

4

12.     According to Union Capital's mortgage files pertaining to the sale of these two units by Bellino-Lee to Davis and Cherry, both units were appraised by O'Donnell. O'Donnell has stated that he did not perform the appraisals. Both appraisals list Lee's cell phone number as the number for O'Donnell. Moreover, both appraisals list O'Donnell's employer as Northeast Value. The mortgage files contain invoices from Northeast Value Consultants, 24 Fireside Drive, Epping, New Hampshire. (These invoices also make reference to Old Mill Appraisals.) As payment for these appraisals, Union Capital wrote a check on March 15, 2006, in the amount of $7,410, payable to "Northeast Value." That check was negotiated; the endorsement signature "Patrick Lee" appears on the reverse of the check.

13.     Along with other law enforcement agents, I have interviewed Davis and Cherry, each of whom was recruited by Jenkins to act as a straw buyer. According to Davis, Jenkins offered him an opportunity to invest in real estate. Jenkins told Davis he would pay Davis $10,000 for use of Davis's name and credit to purchase real estate. Jenkins told Davis that, if Davis were to purchase real estate, Jenkins's investment group would pay all mortgage costs and maintain the property. Jenkins further stated that the goal of the investment group's goal was to re-sell the property within 30 to 60 days for a profit. At no point did Jenkins mention making any improvements to the property.

14.     The mortgage loan application signed by Davis lists his employer as Great Western Capital Corporation of the Americas, which I know to be a company owned by Jenkins. Davis has stated that he in fact never worked for that company. Moreover, the income stated on Davis's loan application is grossly inflated. Davis attended the closing on the sale 650 East Sixth Street, Unit 1. According to Davis, Jenkins attended the closing briefly and introduced Davis to the closing attorney as an investor. The closing was completed in approximately ten

5

minutes. At no time during or prior to the closing, did Davis learn the location of the property being purchased in his name or the price of the property. Davis did not participate in any discussions or negotiations concerning the sale price of the property. At no time did Davis receive keys to the unit or take possession of the unit.

15.     According to Registry records, 650 East Sixth Street, Unit 1 was foreclosed upon in December 2006.

16.     Cherry also said that he was recruited by Jenkins to purchase property. He was paid $7,000 for his role in acquiring 650 East Sixth Street, Unit 2. Before Cherry purchased Unit 2, Jenkins instructed him to deal with a person named Eric to obtain financing. Cherry provided Eric his name, social security number, and employment information. He also informed Eric, as well as another person associated with Eric, that he would not be residing at 650 East Sixth Street, Unit 2. Nonetheless, the loan application states that Cherry intends Unit 2 to be his primary residence. The loan application also falsely lists Great Western Capital Corporation of the Americas as Cherry's employer and falsely states a grossly inflated income.

17.     According to Registry records, 650 East Sixth Street, Unit 2 was foreclosed upon in November 2007.

### 80 Draper Street, Dorchester, Massachusetts

18.     According to records maintained by the Suffolk County Registry of Deeds, Lee purchased a property located at 80 Draper Street, Dorchester, Massachusetts on or about September 25, 2006, for $660,000. Registry records further show that Lee signed a Master Deed for 80 Draper Street, Dorchester, Massachusetts on or about October 25, 2006, dividing 80 Draper Street into three separate condominiums, Units 1, 2 and 3.

### Unit 1

6

19.     Registry records show that Lee sold 80 Draper Street, Unit 1, to Jean Jerome ("Jerome") for $374,900, on or about November 2, 2006. The sale was financed by a mortgage granted by Washington Mutual Bank ("Washington Mutual"). According to the appraisal contained in Washington Mutual's mortgage file, O'Donnell conducted the appraisal on October 12, 2006 and concluded that the appraised value of 80 Draper Street, Unit 1 was $377,000. O'Donnell has stated that he did not perform said appraisal.

20.     O'Donnell's true name and appraiser license number appear on the "Individual Condominium Unit Appraisal Report" contained in the Washington Mutual mortgage file. However, Lee's cell phone number appears on beneath the name "Brian O'Donnell." Moreover, the e-mail address "appraisals30@msn.com" appears beneath Lee's cell phone number. That e-mail address has been registered to Patrick Lee, 24 Fireside Drive, Epping, New Hampshire since July 19, 2006.     That e-mail address shall hereinafter be referred to as "Lee's e-mail address."

21.     On or about January 22, 2008 Washington Mutual foreclosed upon 80 Draper Street, Unit 1.

## Unit 2 and 3

22.     According to Registry records, Lee sold 80 Draper Street, Units 2 and 3, to Francis O'Bryant (O'Bryant) and Juanita White ("White"), respectively.   Lee sold each unit $374,900. Washington Mutual providing financing for Unit 3. First Franklin Mortgage provided financing for Unit 2.

23.     According to Washington Mutual's mortgage file for Unit 3, O'Donnell performed the appraisal for that unit on October 12, 2006 and appraised the unit as valued at $377,000. Again, O'Donnell has stated that he did not perform this appraisal.

7

24.     Nonetheless, O'Donnell's true name and appraiser license number appear on the
"Individual Condominium Unit Appraisal Report" contained in the Washington Mutual
mortgage file. Lee's cell phone number and Lee's e-mail address appear on the report as well.

25.     Registry Records show that Unit 3 was foreclosed upon on or about April 2, 2008.

26.     Registry Records show that Unit 2 was foreclosed upon on or about June 28,
2007.

## 110 Norton Street, Dorchester, Massachusetts

27.     Union Capital provided the financing for the purchase of 110 Norton Street, a
multi family home, in May 2006. The buyer or record was Giles Moss Hayes ("Hayes") who,
based on information and belief, is Lee's father-in law. According to Union Capital's mortgage
file, Hayes gave Lee power of attorney, in April 2006" to "do all things necessary with respect to
the purchase of real property situated at 110 Norton Street . . . ." (It is not clear whether the true
Hayes signed the power of attorney; during the course of this investigation, I have seen various
documents purportedly signed by Hayes but bearing obviously different signatures.) According
to records maintained by the Registry of Deeds, Hayes purchased 110 Norton Street, on or about
May 4, 2006, for $570,000.

28.     According to Union Capital records, on March 29, 2006, a Union Capital loan
officer requested that Patrick Lee, Northeast Value Consultants, conduct the appraisal of 110
Norton Street, Dorchester, Massachusetts. According to documents contained in Union Capital's
mortgage file, O'Donnell appraised the property on March 30, 2006, and valued it at $577,000.
O'Donnell has stated he did not perform the appraisal of this property.

29.     The "Appraisal and Report Identification" contained in Union Capital's mortgage
file for the sale of 110 Norton Street bears what the electronic signature of Brian O'Donnell over

8

the words "Patrick Lee," which are typed. Also appearing on the same page is Lee's true and accurate appraiser license number, 6097. Elsewhere in the appraisal for 110 Norton Street appears the typed name "Brian O'Donnell," along with O'Donnell's electronic signature and true appraiser license number, 3893.

30.     Union Capital records include an invoice, dated April 1, 2006, from Northeast Value. The invoice seeks payment for numerous appraisals conducted by Northeast Value. The words "Northeast Value Consultants, 24 Fireside Drive, Epping, NH" appear in the top left hand corner of this invoice. On the bottom of the page appear the words "Old Mill Appraisals," which is identical to all appraisal documents purportedly used by O'Donnell in the appraisals discussed above. Included on page 2 of this invoice is "HAYES – DORCHESTER." Because this invoice is dated two days following the appraisal of 110 Norton Street, it appears that "HAYES – DORCHESTER" refers to the appraisal of 110 Norton Street for purchase of that property by Hayes. Attached to the invoice, in Union Capital's mortgage file, is a check dated April 14, 2007, from Union Capital to Northeast Value. That check was negotiated and bears the endorsement signature, "Patrick Lee."

31.     According to Registry Records, on January 25, 2006, Lee, acting under Power of Attorney for Hayes signed a Master Deed for 110 Norton Street, thus creating Units 1, 2 and 3.

32.     According to Registry records, Hayes sold Units 1 and 3 to Tommy Clark ("Clark") on June 14, 2006, for $354,900 and $350,000 respectively.

33.     Appraisal documents indicate that O'Donnell appraised Unit 1 on May 10, 2006, for $355,000. O'Donnell has stated he did not perform that appraisal.

34.     On or about February 8, 2008, Unit 1 was foreclosed upon.

35.     On or about April 28, 2008, Unit 2 was foreclosed upon.

9

36.     On or about July 11, 2007 Unit 3 was foreclosed upon.

## 50A Stacy Street, Randolph, Massachusetts

37.     On February 10, 2006, Cherry purchased 50A Stacy Street from Lee's wife, Lydia Lee for $415,000. The mortgage for this purchase was brokered by Union Capital, and funded by GMAC. As with 650 East Sixth Street, Unit 2, Jenkins recruited Cherry to be a straw buyer for 50A Stacy Street. Specifically, according to Cherry, Jenkins did the following, among other things: (1) he promised to pay Cherry for serving as the borrower for the purchase of the property; (2) he told Cherry he could deduct mortgage costs from his taxes; (3) he promised to compensate Cherry if Cherry were to recruit a straw buyer to buy another property (which Cherry did); (4) he helped Cherry fill out certain forms; (5) he coached Cherry on how to respond to questions from the lender; (6) instructed Cherry to tell the lender he was employed full time, whereas Cherry was in fact employed part time; and (7) he told Cherry he would make mortgage payments.

38.     According to Union Capital mortgage documents, O'Donnell performed the appraisal for 50A Stacy Street on January 17, 2006. O'Donnell has stated that he did not perform this appraisal.

39.     According to other records contained in the Union Capital mortgage file, a Union Capital loan officer hired Lee, on January 17, 2006, to perform an appraisal of 50A Stacy Street for buyer Cherry and seller Lydia Lee. In addition, Union Capital provided a copy of an invoice from Northeast Value to Union Capital. The invoice bears the words "Northeast Value Consultants, 24 Fireside Drive, Epping, NH" in the top right hand corner. On the bottom of the page appear the words "Old Mill Appraisals," which appear identical to the appraisal documents purportedly used by O'Donnell in the appraisals discussed above. This invoice requests payment

10

to Northeast Value for numerous appraisals conducted by Northeast Value, including an appraisal identified as "Cherry – Randolph." This invoice is dated February 1, 2006, fifteen days after the above referenced appraisal for 50A Stacy Street, Randolph, Massachusetts was completed.

40.     Accompanying the invoice is a check dated February 8, 2008 from Union Capital to Northeast Value, That check was negotiated and bears the endorsement signature "Patrick Lee."

41.     On or about January 17, 2007, 50A Stacy Street was foreclosed upon.

## III.     USE OF THE MAILS AND INTERSTATE WIRE COMMUNICATIONS

42.     Based on my training and experience, I know that documents used at closings of real estate transactions are routinely sent by facsimile from mortgage brokers to lenders and that payments are routinely wired interstate. I am also aware that closing attorneys and mortgage brokers routinely use private or commercial mail carriers to send closing files to lenders.

43.     As a specific example of the use of an interstate wire communication closely related to the scheme to defraud described herein, Union Capital sent a Request for Appraisal for 50A Stacy Street, Randolph, Massachusetts via facsimile from Massachusetts to New Hampshire, to a facsimile number assigned to P. and L. Lee, 24 Fireside Drive, Epping, New Hampshire.

44.     As specific examples of Lee causing the use of the mail or of a private or commercial interstate carrier in a manner closely related to the scheme described herein, Union Capital sent the entire mortgage loan files relating to the sale of 650 East Sixth Street, Units 1 and 2, South Boston, Massachusetts via Federal Express from Massachusetts to Fremont Investment and Loan, which is located in California.

11

45.     Based on the foregoing, there exists probable cause to believe that, from July

2005 or earlier until November 2006 or later, Patrick Lee committed violations of 18 U.S.C.

§§1341 (mail fraud), 1343 (wire fraud),) and 1028A (aggravated identity theft).

Subscribed and sworn to under the penalties of perjury.

DAVID J. MCKEOWN
SPECIAL AGENT
UNITED STATES SECRET SERVICE

Subscribed and sworn to before me this 29th day of May, 2007.

TIMOTHY S. HILLMAN
United States Magistrate Judge

12