UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PATRICK LEE,<br><br>      Defendant | Criminal No. 10-cr-10386-PBS |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States respectfully submits this Sentencing Memorandum in support of its position that Defendant Patrick Lee be sentenced to imprisonment for 78 months (or 63 months, if Lee renounces his false denial and frivolous challenge to his conduct in the offenses of conviction and to the relevant conduct for which he is accountable) followed by 36 months of supervised release, and that he be ordered to pay a restitution order in the amount of $842,552, a forfeiture money judgment in an amount to be specified in the United States' forthcoming Motion for Order of Forfeiture (Money Judgment), and a $200 mandatory special assessment.

1. **Term of Imprisonment – Guidelines Calculation**

Per the terms of the plea agreement, the government takes the position that Lee's total offense level, before any adjustment for acceptance of responsibility, is 28. *See* Plea Agreement, ¶ 3. The government disagrees with Probation's position that the 2-level enhancement for sophisticated means, or the 4-level enhancement for organizer role, applies. *See* Government's Objections to PSR, Nos. 2-3.

In the plea agreement, the government agreed to recommend a 2-level reduction based on

1

Lee's acceptance of personal responsibility for the offenses of conviction, that is, Counts 4 and 34 of the indictment. Plea Agreement, ¶ 3. The government has reserved the right not to recommend this reduction if, at any time between Lee's execution of the plea agreement and sentencing, Lee, *inter alia*, "[f]ails to truthfully admit [his] conduct in the offenses of conviction" and/or "falsely denies, or frivolously contests, relevant conduct for which [he] is accountable under USSG § 1B1.3." *Id.* ¶ 3(b)-(c). Lee's objection to "each and every paragraph comprising the statement of facts from ¶ 10 through 58" of the PSR, Defendant's Objection No. 1, satisfies both of these bases to not recommend the 2-level decrease.

First, by denying ¶¶ 10 and 13-20 of the PSR, Lee has failed to truthfully admit his conduct in the offenses of conviction. During the change-of-plea hearing, the government read aloud its version of the facts underlying Counts 4 and 34, and Lee agreed that all of those facts were true. *See* Hrg. Tr. (attached hereto as <u>Exhibit A</u>) at 15-22. Paragraphs 10 and 13-20 of the PSR restate, verbatim, the statement read by the government at the hearing. Lee's denial of the facts stated in those paragraphs of the PSR constitutes a complete about-face from his admissions at the change-of-plea hearing. *See also, e.g.*, Def. Sentencing Memo. at 11 (stating that the proceeds of the sales of 110 Norton Street, Units 1 and 2, "were paid to Dwight Jenkins' wife and not to Mr. Lee," despite Lee's admission at the change-of-plea hearing that he directed the closing attorney, John Nelson, to pay those monies to Jenkins); *id.* at 18-19 (questioning whether Lee prepared the appraisal for 110 Norton Street, despite his admission at the change-of-plea hearing that he did so).

Second, by denying ¶¶ 11-12 and 21-58 of the PSR, Lee has falsely denied, or frivolously contested, the relevant conduct for which he is accountable. *See also, e.g.*, Def. Sentencing

Memo. at 12 (blaming the mortgage lenders for the financial loss that Lee caused); *id.* at 20 (falsely denying Lee's involvement in the fraudulent transactions concerning 95 Topliff Street). As explained in that section of the PSR and in the government's responses to Lee's objections (copy attached as <u>Exhibit B</u>), the government's evidence supports the facts stated in the PSR. If Lee persists in pressing his objections to relevant conduct, the government intends to present testimony transcripts and documents proving those facts by a preponderance of the evidence.

For these reasons, Lee's continued denial of the facts stated in paragraphs 10-58 of the PSR will result in the government recommending no reduction for acceptance of responsibility. *See also* PSR, Probation Officer's Responses to Defendant's Objections, Nos. 1, 7, 19 (recommending that the Court consider not granting a reduction for acceptance of responsibility). If, however, at sentencing Lee renounces his objections and fully accepts responsibility, the government will recommend the reduction.

If the 2-level reduction applies, the government's position is that Lee's total offense level is 26, resulting in a Guidelines range of 63-78 months. If it does not, Lee's total offense level is 28, resulting in a Guidelines range of 78-97 months. In either case, the government recommends imprisonment at the low end of the Guidelines range. *See* Plea Agreement ¶ 4(a).

**2. <u>Supervised Release</u>**

The Guidelines range for supervised release is between one and three years. *See* PSR ¶ 131. Pursuant to the plea agreement, the government requests that the Court impose the maximum three year term. Because Lee has dual citizenship, he can legally reside and work in the United States and therefore, if he is released here and remains here, he should be subject to supervision. If at the end of his term of imprisonment he wishes to return to Ireland, and his

family circumstances remain the same, that is, his family continues to reside in Ireland, Lee may petition the Court to terminate supervised release.

### 3. Restitution

The government requests that the Court order restitution to CitiMortgage in the amount of $526,691 and to JPMorgan Chase in the amount of $315,861, for a total of $842,552. *See* PSR ¶ 139. These amounts are the losses related to mortgage loans that were extended because of Lee's wire fraud in connection with the purchases of 650 East Sixth Street, Unit 2 (Count 3), 95 Topliff Street, Unit 1 (Count 29), 85 Draper Street, Unit 3 (Count 22), 80 Draper Street, Unit 3 (Count 17), and 110 Norton Street, Unit 2 (Count 26).

At the change-of-plea hearing, the Court asked the government to brief the issue whether restitution may be ordered based on relevant conduct. The answer is yes, where, as here, the offense of conviction is wire fraud and the relevant conduct is part of the same wire fraud scheme.

Under the Mandatory Victims Restitution Act, "when sentencing a defendant convicted of an offense described in subsection (c), the court shall order . . . that the defendant make restitution to any victim of such offense . . . ." 18 U.S.C. § 3663A(a)(1).[1] "For the purposes of this section, the term 'victim' means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered *including, in the case of an offense that involves as an element a scheme*, conspiracy, or pattern of criminal activity, *any*

---

[1] Subsection (c) applies because Lee has been convicted of "any . . . offense against property under [Title 18], including any offense committed by fraud or deceit . . . in which an identifiable victim or victims has suffered a . . . pecuniary loss." 18 U.S.C. § 3663A(c)(1); *see also* USSG § 5E1.1(a)(1). Lee also agreed in the plea agreement to pay restitution, including for relevant conduct. *See* 18 U.S.C. §§ 3663(a)(3), 3663A(a)(3); Plea Agreement ¶ 4.

*person directly harmed by the defendant's criminal conduct in the course of the scheme*, conspiracy, or pattern." *Id.* § 3663A(a)(2) (emphasis added). Therefore, if the offense involved a scheme as an element, restitution may be based on relevant conduct that is part of the scheme. *See, e.g.*, *United States v. Matos*, 611 F.3d 31, 43-44 (1st Cir 2010); *United States v. Acosta*, 303 F.3d 78, 86-87 (1st Cir. 2002) ("In such cases, the district court may order restitution without regard to whether the conduct that harmed the victim was conduct underlying the offense of conviction.").

For example, in a case concerning a mortgage fraud scheme, the government charged the defendant with 68 counts of wire fraud and one count of money laundering. *Matos*, 611 F.3d at 34. The defendant pled guilty to three of the wire fraud counts plus the money laundering count; the government agreed to dismiss the remaining counts as part of the plea agreement. *Id.* at 43. The Court ordered the defendant to pay restitution to the victim in one of the dismissed wire fraud counts. The First Circuit upheld the district court's order "[b]ecause a 'scheme or artifice to defraud' is an element of wire fraud." *Id.* (quoting 18 U.S.C. § 1343).

The indictment charged Lee with a mortgage fraud scheme, Indictment ¶ 18, and Lee has admitted participating in that scheme, Rule 11 Hrg. Tr. at 15, 22. Therefore, the Court must order restitution to all victims directly harmed by Lee's criminal conduct in the course of that scheme.

### 4. Lee's Request to Serve His Sentence in Ireland

Lee has asked to serve his sentence in Ireland. Def. Sentencing Memo. (Doc. No. 219) at 20. A district court is not authorized to designate a facility where a defendant will serve his sentence. *See* 18 U.S.C. § 3621(b) ("[t]he Bureau of Prisons shall designate the place of the prisoner's imprisonment"); *United States v. Quinones Melendez*, 2000 WL 1160448, at *1 (1st

Cir. July 13, 2000) ("the authority to assign prisoners to particular facilities lies solely with the Bureau of Prisons") (unpublished).   A district court is not empowered to order that a defendant serve his sentence in another country.

     After Lee is assigned to a Bureau of Prisons facility and begins serving his sentence, however, he may contact his BOP case manager and apply for a transfer under the International Prisoner Transfer Program. This program is run by the Department of Justice. *See* https://www.justice.gov/criminal-oia/how-program-works. The decision whether to approve a transfer request is made jointly by DOJ and the receiving country. *See id.* Prisoners may be transferred to countries with which the United States has a prisoner transfer treaty in order to serve their sentence closer to home and facilitate their reentry. *See* https://www.bop.gov/inmates/custody_and_care/treaty_transfers.jsp. Ireland is among the countries with which the United States has a prisoner transfer treaty. *See id.*

Dated: February 22, 2019                                  Respectfully submitted,

                                                              ANDREW E. LELLING
                                                              United States Attorney

                                      By:    */s/ Sandra S. Bower*
                                                    */s/ Christine J. Wichers*
                                                    SANDRA S. BOWER
                                                    CHRISTINE J. WICHERS
                                                    Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

    I, Sandra S. Bower, Assistant U.S. Attorney, do hereby certify that I have this day served a copy of the foregoing on defendant's attorney by electronic filing.

                                                */s/ Sandra S. Bower*
                                                Sandra S. Bower
                                                Assistant U.S. Attorney